*125 OPINION of the Court, by
Ch. J. Boyle.
This is a contest for land under adverse claims. ■ The appellants were complainants, and derive their title under a settlement and; pre-emption granted to Peter Flinn The certificate and entry of the settlement calls to lie “at the mouth of Brashears’ creekvin the fork of said creek and Salt river, crossing the creek to include a pond.” The entry upon the pre-emption warrant was made the 30th of March 178⅜, and calls to adjoin the settlement “on the north and east sides thereof, and to run north and east for quantity.”
Salt river and Brashears’ creek were agreed by the parties to have been notorious by those names, at and before the date of these entries, and to have continued so ever since.
A pond of the extent of about SO by IQO poles is delineated on the surveyor’s report, and from its situation may be included in the survey of the settlement by running it across the creek. But there being no other evidence of the pond than the surveyor’s report, it is con *126 tended that it is not sufficient to establish the present existence of the pond ; or if it be, that an inference cannot be thence deduced that the pond existed at the dates of the entries.
Entry of 400 acresfi to lie at ike mouth of Braihears-’ cr’k. in the fork of raid creek and Salt river, crof-fing the creek to include a pond,” how to be furveyed.
1000 acres to join it on the N and E. and run N. and E. for quantity .'.Sams principle, vol. a, Walker vs. Montgomery, p, 255 —Clinking-beard vs. Kenny, 5*7-
A location on a pre-emption warrant made at a time when the right of pre^ emption had lapfed, is not entitled to the dignity of a pre. empt'ion under fubf.quent laws for extending the time for lo» eating pre.emp. tion wai rants.1
Entry of 400 acres u on Bra /hears* creek, to begin one mile from the moutb, and run up on both hies there of; three times as long aswide’* —the diilance to be taken on a direct line — Vide rules 7 & 8, vol. s, 649, vol, J, 632.
*126 . The surveyor’s report has uniformly been treated as evidence of the existence, at the date of the report, of such objects as the surveyor is authorised to delineate ; and that it is treated so correctly, has been expressly decided in more than one instance. Whether, from the present existence of an object, it is admissible to infer that it existed at any former period, depends upon the nature of the object. If the object be an artificial or transient one, which can be made to appear and disappear at pleasure, such an inference cannot follow ; but if it he a natural object, permanent and immutable in its nature, the conclusion is inevitable. A pond, however, it is urged, although a natural objeot, is not permanent or unchangeable in its nature : for many ponds have appeared in the country since its first settlement, in places where none existed formerly. This is no doubt true with respect to ponds of a small size ; but it is believed rarely, if ever, to have happened that a pond of the magnitude of the one in question in this case has made its appearance where there was none at the first settlement of the country. The inference is, therefore, highly probable, that .it had an existence at the dates of the entries.
The objects called for being established, there is no difficulty with respect to the manner in which the surveys should be made.
The line forming the northern boundary of the settlement should barely include the pond, and be run at right angles to a course from the point of confluence of Salt river and Brashears’ creek through the pond and bisecting it; the eastern and western boundaries should be formed by lines at right angles to the northern boundary, each being equidistant from the pond : the latter when it strikes the creek to run with it to its mouth, and the former to be extended across the creek to Salt river. The pre-emption should adjoin the settlement, when thus surveyed, on the north and east; its lines to be equidistant from the north and east lines of the settlement.
For all the land included in the settlement and preemption respectively, when thus surveyed, and which is *127 included in the surveys respectively as made, the appel-lee should be decreed to make a conveyance of his elder legal title, unless he can protect himself by an elder and better entry than those under which the appellants claim. This leads to an investigation of the entry under which the appellee derives title. It is an entry of 400 acres, upon a treasury warrant, made the 19th cf May 1780, and calls to lie “on Brashears’ creek, to begin one mile from the mouth thereof, and to run up the same on both sides thereof three times as long as wide for quantity.” With the settlement this entry has no pretensions to compete, but being of an elder date than the entry on the pre eruption warrant, the latter must be postponed to it, unless the right of pre-emption existed at the time when the entry on the pre-emption warrant was made. This does not appear to have been the case. It is true that by acts passed subsequent to the date of the entry in this case, the right of making entries upon pre-emption warrants was prolonged until a much later period ; but these acts do not in terms embrace the case of a preemption warrant upon which an entry had been made when the right of pre-emption did not exist; and it would be unreasonable and unjust to extend them by construction beyond their literal import, and thereby overreach entries that had been previously made upon treasury warrants: So far, therefore, as the appellee’s entry has been surveyed correctly, it must hold against the entry upon the pre-emption warrant.
A reSianguiaf furvey would not include the curves of the creek, therefore a departure from the general rule is di* retied;
The furvey dire&ed by the court of appeals varying from that dire&ed below, but yet embracing all the land given by the decree below, the de* cree affirmed— Accord. Crac kin verjas Steele, vol* I, 50.
It is made a question whether the survey upon this entry should begin a mile from the mouth of the creek measuring along its meanders or on a straight line ? It is settled, that where a distance is given on a road, it ought to be ascertained by the windings of the road ; but it has also long since been settled, that where a distance is given on a stream like the present, which presents no impassable obstructions, the distance should be understood to be on a straight line.
-The point of beginning being thus fixed, it remains to be determined how the lines of the survey shall be run. The ordinary mode of surveying an entry with similar calls, would require the lines to be run at right angles, those extending up the stream to be parallel to the general course thereof so far as it would be included in the survey, and those extending across the stream *128 fo be bisected thereby. But in this case, owing t« the peculiar and extraordinary bend of the creek, the rectangular figure cannot be preserved, and at the same time comply with the call to run up the creek on both sides ; and as this is an express call, it must control the rectangular figure, that being a form given by construction only, where there is no express indication of the intention of the locator to give to the survey a different shape.
We are, therefore, of opinion that the survey should be extended from the beginning up the creek with the courses of its meanders, so far as will include the quantity in a survey the length of which shall be three times its width ; the side lines to be equally distant from the creek, and the end lines to be at right angles to the general course of the creek so far as the same shall be included in the survey. This mode of surveying, though different from that directed by the court below, will not give the appellants any other or more land than they will be entitled to under the decree of that court.
The decree must therefore be affirmed with costs.